IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

BRANDON C.[1],

               Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

               Defendant.

Case No. 3:25-cv-01253-JR

OPINION AND ORDER

RUSSO, Magistrate Judge:

Plaintiff Brandon C. brings this action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for Supplementary Security Income under Title XVI of the Social Security Act. All parties have consented to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with Fed. R. Civ.

---

[1] In the interest of privacy, this opinion uses only the first name and initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

P. 73 and 28 U.S.C. § 636(c). For the reasons set forth below, the Commissioner's decision is reversed, and this case is remanded for further proceedings.

## PROCEDURAL BACKGROUND[2]

Born in December 1998, plaintiff alleges disability beginning June 3, 2022,[3] due to bipolar disorder, severe generalized anxiety, and social phobia. Tr. 33, 166, 288. His application was denied initially and upon reconsideration. On August 6, 2024, a hearing was held before an Administrative Law Judge ("ALJ"), wherein plaintiff was represented by counsel and testified, as did a vocational expert ("VE"). TR 29-46. On August 21, 2024, the ALJ issued a decision finding plaintiff not disabled. Tr. 12-28. After the Appeals Council denied his request for review, plaintiff filed a complaint in this Court. Tr. 1-6.

## THE ALJ'S FINDINGS

At step one of the five-step sequential evaluation process, the ALJ found plaintiff had not engaged in substantial gainful activity since the application date. Tr. 17. At step two, the ALJ determined the following impairments were medically determinable and severe: depressive disorder and generalized anxiety disorder. *Id.* At step three, the ALJ found plaintiff's impairments, singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 18.

Because he did not establish presumptive disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected his ability to work. The ALJ resolved that plaintiff had the residual function capacity ("RFC") to perform a full range of work except:

> [He] can understand, remember, and carry out detailed but not complex
> instructions; can deal with occasional changes in a work setting; can use judgment
> to make simple work related decisions; cannot perform work requiring a specific

---

[2] The record before the Court is nearly 900 pages, but with some incidences of duplication. Where evidence occurs in the record more than once, the Court will generally cite to the transcript pages on which that information first appears in its entirety.

[3] Plaintiff originally alleged disability as of May 20, 2015, but amended his onset date. Tr. 288.

production rate, such as assembly line work; is able to tolerate frequent contact with supervisors and co-workers; and can tolerate occasional contact with the general public.

Tr. 19-22.

At step four, the ALJ determined plaintiff had no past relevant work. Tr. 23. At step five, the ALJ concluded, based on the VE's testimony, that jobs existed in significant numbers in the national economy that plaintiff could perform despite his impairments, such as auto detailer, hand packager, and floor waxer. Tr. 23-24.

## DISCUSSION

Plaintiff argues the ALJ erred by: (1) failing to provide clear and convincing reasons to reject plaintiff's symptom testimony; and (2) determining plaintiff did not meet a listing at step three of the sequential analysis.

## I.     Plaintiff's Testimony

Plaintiff contends the ALJ erred by discrediting his testimony concerning the extent of his impairments. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). A general assertion the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) (internal citation omitted). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). In other

Page 3 – ORDER AND OPINION

words, the "clear and convincing" standard requires an ALJ to "show [their] work[.]" *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

Thus, in formulating the RFC, the ALJ is not tasked with "examin[ing] an individual's character" or propensity for truthfulness and instead assesses whether the claimant's subjective symptom statements are consistent with the record as a whole. SSR 16-3p, *available at* 2017 WL 5180304. If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted). The question is not whether the ALJ's rationale convinces the court, but whether the ALJ's rationale "is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499.

At the August 2024 hearing, plaintiff testified that he was unable to work due to constant exhaustion. Tr. 34. He often found it difficult to get out of bed and had difficulty bathing and taking out the trash. He would often have to "psych [himself] up to do [those things]," and left him needing to sit or lie down. *Id.* He described taking care of basic needs as "really hard." Tr. 37. He said that getting out of bed some days felt "like a miracle". *Id.* He would nap "pretty much every day, sometimes twice [a day]." Tr. 39.

Plaintiff described difficulty with memory and concentration. Tr. 34. He was able to remember appointments, which were all virtual, because he would "worry about them". Tr. 38-39. When reading he would need to reread something "over and over" to comprehend it and if someone told him something there was "a good chance" that soon after he would "only remember about half of what they said." Tr. 38. He spent his days with his pets, sleeping, or scrolling on his phone. *Id.*

Plaintiff also testified about his anxiety and panic attacks. Tr. 34-35. He explained that his panic attacks were sometimes triggered by something stressful to him, such as receiving personal criticism, and sometimes were "just out of the blue for no reason." Tr. 35. During a panic attack, he could not think straight, would feel faint, experience blurry vision, feel hot, have an upset stomach, and need to "get away from the situation." *Id.* Plaintiff explained that he left his house the week before the hearing to go to the vet to have the family dog put down, but prior to that he had not left the house, other than to do something like take out the garbage, for over a year. Tr. 36. He has never tried to obtain a driver's license due to anxiety about getting into an accident or hallucinating while driving. Tr. 40. Plaintiff testified that in a work setting, it would be difficult for him to interact with coworkers or customers, take instruction, receive criticism, or do paperwork. Tr. 41-42.

After summarizing his hearing testimony, the ALJ determined that plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 19-20. In particular, the ALJ cited treatment notes showing plaintiff had a blunted affect and varying mood but otherwise normal mental status exams, medication improved plaintiff's anxiety and brain fog, the lack of ongoing mania or suicidal thoughts, and plaintiff's ability to perform various household chores. Tr. 20-22.

The ALJ then summarized the medical evidence but did not explain what evidence discredited specific symptom testimony. Tr. 20-22. An ALJ is not required "to perform a line-by-line exegesis of the claimant's testimony," but a summary of the medical evidence "is not the same as providing clear and convincing reasons for finding the claimant's symptom testimony not

credible." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (quoting *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015)). Rather, to support a non-credibility determination, the ALJ must connect the medical record to plaintiff's symptom testimony. *Brown-Hunter*, 806 F.3d at 494. Even assuming the ALJ linked the evidence cited to specific symptom testimony, the ALJ's rationale does not have the power to convince.

Regarding plaintiff's "normal" mental status exams, the ALJ specifically pointed to provider notes from August 2023, March 2024, and April 2024. Tr. 20. During the August 2023 and March 2024 exams, plaintiff appeared well groomed and adequately nourished, exhibited calm behavior, normal speech, linear thought process, good insight and judgment, was alert and oriented, and did not report suicidal or homicidal ideation or hallucinations. Tr. 20, 807, 820-21. The exams from those appointments also listed his mood as "low" and his affect as blunted or "[n]ot much range." Tr. 807, 820-21. The March 2024 notes are similar, except that plaintiff's behavior was cooperative, his speech was slow, and his thought process was spontaneous. Tr. 858. His mood and affect were again low and blunted, respectively. *Id.* In summarizing plaintiff's treatment, the ALJ referenced the mental status exams from numerous appointments, each of which shows plaintiff had generally normal appearance, behavior, speech, thought process, thought content, insight, judgment, and cognition, but a low or anxious mood and blunted or anxious affect. Tr. 20-21, 306, 302, 299-300, 788, 783-84, 807, 827, 825, 823, 820-21, 858, 853.

The ALJ's reliance on the parts of plaintiff's mental status exams that support discrediting plaintiff's symptom testimony while setting aside the mood and affect sections of those exams amounts to cherry picking. Some normal findings alongside abnormal mood and affect findings are not clear and convincing reasons to discount plaintiff's testimony. *See Emily S. v. Kijakazi*, 2023 WL 3805257 *8 (N.D. Cal. June 1, 2023) ("[I]t is not altogether clear how Plaintiff could

Page 6 – ORDER AND OPINION

have both 'mood and affect disturbances and 'generally normal findings.'"). The ALJ cannot rely on mixed mental status exams to discredit plaintiff's symptom testimony.

The ALJ also explained that plaintiff's symptom testimony was undermined by medication that improved his anxiety and brain fog. Tr. 20. The ALJ's support for medication improving plaintiff's anxiety is based on a chart note from October 2022, noting that plaintiff "reports he has not had any intense anxiety episodes since we started Buspar, but he still has underlying anxiety with a lot of worrying and ruminating." Tr. 305. Chart notes from November 2022 show that Buspar was discontinued due to increased fatigue and plaintiff's report of a "panic attack[.]" Tr. 304. The ALJ's support for medication improving plaintiff's brain fog is based on a chart note from March 2023, noting plaintiff "reports his brain fog cleared up when I lowered his Lamictal back to 200 mg daily," and a note from July 2023, noting that plaintiff "felt he wasn't thinking as clearly" while taking Ability, but that symptom "went away" after he stopped taking Ability. Tr. 299, 783.

"[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability." *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017). However, notes regarding improvements "must be read in the context of the overall diagnostic picture[.]" *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001). "[I]t is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014).

The record shows plaintiff's improvements regarding anxiety and brain fog were not lasting.  In March 2023, plaintiff reported his main issues were depression and anxiety. Tr. 299. In April 2023, plaintiff was anxious during his appointment and reported "he was hyperventilating about an hour ago." Tr. 788. He had discontinued Prozac the day before, reporting that it made his

Page 7 – ORDER AND OPINION

anxiety worse. *Id.* In July 2023, his provider increased his Luvox for anxiety and noted that plaintiff expressed "[s]ome feelings that something bad is about to happen, sounds like anxiety." Tr. 782-83. In August 2023, plaintiff's Luvox dosage was raised from 50 mg to 100 mg daily to help with anxiety and depression. Tr. 806. Similarly, while plaintiff showed improvement in brain fog in March and July 2023, he again reported brain fog in January 2024. Tr. 299, 783, 822.  In March 2024, he reported difficulty concentrating and trouble focusing and remembering. Tr. 819. In June 2024, he reported one of his medications "made him feel slow, 'stupid.'" Tr. 853.

The ALJ cannot rely on temporary improvements in plaintiff's anxiety and brain fog to discredit plaintiff's symptom testimony.

The ALJ further relied on the absence of mania or suicidal thoughts when plaintiff was medicated and in therapy to discredit plaintiff's symptom testimony. Tr. 20. However, plaintiff did not testify that he experienced either mania or suicidal thoughts. Therefore, the ALJ cannot rely on the absence of mania or suicidal thoughts to discredit plaintiff's symptom testimony.

Finally, the ALJ relied on plaintiff's ability to perform household chores to show that he could follow instructions and complete tasks. Tr. 20. Plaintiff submitted forms reporting difficulty remembering verbal instructions, needing to repeatedly check written instructions, and struggling to focus on tasks for an extended period. Tr. 189, 235. He also reported paying attention for only 10 to 15 minutes. Tr. 235. Plaintiff noted that things other people find ordinary, such as appointments, paperwork, and daily life, cause him severe anxiety. Tr. 236. At his hearing, plaintiff testified he had difficulty concentrating, easily lost his train of thought, struggled to comprehend things he reads, forgot things people told him, and "zoned out." Tr. 34, 38-39.

The ALJ relied on plaintiff's mother's third-party statements regarding plaintiff's household chores and other daily activities. Tr. 22. In those statements, plaintiff's mother explained

Page 8 – ORDER AND OPINION

that plaintiff would make coffee or meals, such as sandwiches, frozen meals, and chicken strips; take out the garbage; get the mail; let the dog out; brush the cat; do his laundry; clean his bathroom; do dishes; vacuum; and infrequently shop on the computer. Tr. 173-75. Plaintiff's mother also explained that he could not "even cook a meal most days or do any chores[,]" that his care for the dog included opening the door to let her in and out, that he committed ten minutes a day to dishes, five minutes a week to trash, did one load of laundry per week, and had not cleaned the bathroom in months. Tr. 218-19, 224.

An ALJ may use daily activities to discount a plaintiff's symptom testimony if those activities contradict the plaintiff's testimony or "meet the threshold for transferable work skills[.]" *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Here, the ALJ did not posit that plaintiff's daily activities indicate capacities transferable to a work setting.

Plaintiff's household chores and other daily activities also do not contradict his testimony. Nothing in the record suggests any of plaintiff's daily activities require him to pay attention for more than 10 to 15 minutes and plaintiff's mother's third-party statement specifically explained that some activities take even less time. Tr. 224. None of those activities require plaintiff to follow either spoken or written instructions that he could not repeatedly reread. Further, the fact he may complete those activities does not discredit his testimony that they cause him severe anxiety, particularly where he separately testified that he has to "psych [himself] up" to perform them. Tr. 34.

In sum, the ALJ neglected to provide a clear and convincing reason, supported by substantial evidence, for affording less weight to plaintiff's subjective symptom testimony. The ALJ's decision is reversed as to this issue.

## II.    Step Three

Plaintiff also argues the ALJ erred by not finding him presumptively disabled by his bipolar disorder and generalized anxiety disorder under Listings 12.04 and 12.06, respectively. At step three, the ALJ assesses whether the claimant has an impairment or combination of medically determinable, severe impairments that meets or equals a listing. *Marcia v. Sullivan*, 900 F.2d 172. 174 (9th Cir. 1990). The claimant bears the burden of demonstrating that "all of the specified criteria [are met]." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.*

Further, a determination of medical equivalence must rest on objective medical evidence. *Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001); SSR 17-2p, available at 2017 WL 3928306. In particular, "[m]edical equivalence must be based on medical findings" and "[a] generalized assertion of functional problems is not enough to establish disability at step three." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999) (citation and internal quotations omitted).

Here, the ALJ determined plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of Listings 12.04 or 12.06. Tr. 18. To meet Listings 12.04 or 12.06, a plaintiff must satisfy the criteria described in paragraphs A and either paragraphs B or C of the Listings. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.00(A)(2)(b), 12.04, 12.06. The ALJ addressed only paragraph B criteria and paragraph C criteria of Listings 12.04 and 12.06.[4] Tr. 18-19.

---

[4] The paragraph B criteria for Listings 12.04 and 12.06 are identical, as are the paragraph C criteria.

### A.    The Paragraph B Criteria

"To satisfy the paragraph B criteria, the mental impairments must result in one extreme limitation or two marked limitations in any of four areas of functioning" – i.e., understanding, remembering, or applying information; interacting with others; concentration, persistence, or maintaining pace; and adapting or managing oneself. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A)(2)(b). An extreme limitation is "incompatible with the ability to do any gainful activity." 20 C.F.R. § 416.920a(c)(4). "A marked limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis." Tr. 18.

Here, the ALJ determined plaintiff had no limitation in understanding, remembering, or applying information; a moderate limitation in interacting with others; a moderate limitation concentrating, persisting, or maintaining pace; and no limitation in adapting or managing oneself. *Id.* Plaintiff contends the ALJ erred finding plaintiff had only a moderate limitation in interacting with others where the record supports a finding that plaintiff has an extreme limitation in interacting with others.

In analyzing plaintiff's ability to interact with others, the ALJ noted plaintiff's testimony that he rarely left home due to anxiety about being around others, his appointments were all online, he never tried to obtain a driver's license because of his anxiety about hallucinating or becoming too anxious while driving, and he did not shop in stores. Tr. 18. The ALJ also noted that plaintiff interacts with his mother in their home and that plaintiff left his home with his mother the week prior to the hearing because their dog had to be euthanized. <u>Id.</u> The ALJ fails to note plaintiff's testimony that the trip with his mother to have their dog euthanized was the first time in over a year plaintiff left their home except to accomplish a chore like taking out the garbage, plaintiff's

Page 11 – ORDER AND OPINION

testimony that personal criticism may trigger a panic attack, plaintiff's statement that his social contact is minimal and that being around others makes him extremely uncomfortable, or his mother's statement that she is the only person he would see in person and he rarely communicated with anyone else. Tr. 35-36, 176, 188.

However, additional evidence in the record supports the ALJ's determination, including plaintiff's mental status exams and medical opinions from Dr. Benjamin Kessler and Dr. Sergiy Barsukuv. Drs. Kessler and Barsukuv separately determined that plaintiff is capable of appropriate coworker and supervisor interaction, although incapable of greater than occasional interaction with the general public. Tr. 52, 61, 807, 820-21, 858.

Reviewing the record, there is sufficient support for the ALJ's determination that plaintiff has a moderate limitation in interacting with others. "When the evidence reasonably supports either confirming or reversing the ALJ's decision, [the reviewing court] may not substitute [its] judgment for that of the ALJ." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

### B.    Paragraph C Criteria

To satisfy the paragraph C criteria of Listings 12.04 and 12.06, a plaintiff's mental impairment must first be "'serious and persistent;' that is, there must be a medically documented history of the existence of the disorder over a period of at least 2 years[.]" 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A)(2)(c). Additionally, there must be evidence showing the plaintiff relies on an ongoing basis, on medical treatment, mental health therapy, psychosocial support, or a highly structured setting, that diminishes the plaintiff's symptoms and signs of mental disorder. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.00G(2)(b), 12.04(C)(1), 12.06(C)(1). Finally, there must also be evidence that the plaintiff has achieved only marginal adjustment,  i.e., the plaintiff has minimal

capacity to adapt to changes in their environment or to demands that are not already part of their daily life. 0 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.00G(2)(c), 12.04(C)(2), 12.06(C)(2).

Here, the ALJ determined "the evidence [did] not establish all requirements of the paragraph C criteria." Tr. 18-19. The ALJ's failure to make detailed findings at step three does not constitute reversible error so long as the ALJ discussed the record in other sections of the decision. *See Kruchek v. Barnhart*, 125 F. App'x 825, 827 (9th Cir. 2005). Elsewhere in the decision, the ALJ explained plaintiff used his computer for shopping, he could manage his own finances, and he performed household chores. Tr. 18, 22.

Plaintiff's depressive and anxiety disorders satisfy the first part of the paragraph C criteria, as he has more than two years of a medically documented history of the existence of the disorders. Tr. 311-12. In August 2021, when he first saw the provider that he continued seeing through the date of his hearing, plaintiff was being treated for bipolar disorder 2 and anxiety. Although his mood was stable and he believed his anxiety was under control at that time. *Id.* However, by June 2022, he again reported anxiety and depression, as well as panic attacks and insomnia. Tr. 310. As previously discussed, the record shows those symptoms were cyclically ongoing through plaintiff's August 2024 hearing, satisfying the paragraph C duration requirement.

Additionally, plaintiff's medical treatment was ongoing and diminished the symptoms and signs of his mental disorders, meeting the second requirement of paragraph C. For instance, Lamictal has stabilized his mood fluctuations but not helped with his low mood or anxiety. Tr. 299 (Lamictal helping stabilize mood, but adjusting dosage and changing other medications), 825 (Lamictal helping with mood stabilization, adjusting other medications). His provider also noted in June 2024, that plaintiff "has tried a lot of medications," but "just hasn't quite found the right combination." Tr. 851.

However, plaintiff does not establish the final element of the paragraph C criteria, that he has minimal capacity to adapt to changes in his environment or to demands not already part of his daily life. Plaintiff reports that he struggles to deviate from his normal routine, is stressed by things most people are only slightly stressed by, worries over his virtual medical appointments, rarely leaves his home, and only spends time with his mother. Tr. 38-39, 184, 190, 226-27, 858. However, Dr. Kessler and Dr. Barsukuv separately determined that plaintiff did not have adaptation limitations. Tr. 50, 52, 59, 61. Their medical findings that plaintiff did not have adaptation limitations were based on their prognosis that plaintiff was "able to sustain concentration and pace to carry out simple and routine tasks over a normal workday and workweek[,]" and that he was "capable of appropriate coworker and supervisor interaction." Tr 52, 60-61. Dr. Kessler and Dr. Barsukuv based those determinations on their respective findings that plaintiff was able to maintain eye contact, follow his exams, and exhibit calm behavior with both normal thought process and thought content. Tr. 50, 58. It was reasonable for the ALJ to rely on the medical opinion testimony from Dr. Kessler and Dr. Barsukuv to determine that plaintiff did not meet the paragraph C criteria for 12.04 and 12.06 in step three of the analysis.

## III.    Remedy

The decision whether to remand for further proceedings or for the immediate payment of benefits lies within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1176-78 (9th Cir. 2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1090-1100 (9th Cir. 2014). The court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence

that has been improperly rejected by the ALJ to determine if a claimant is disabled. *Strauss v. Comm'r Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011); *see also Dominguez v. Colvin*, 808 F.3d 403, 407-08 (9th Cir. 2015) (summarizing the standard for determining proper remedy).

Under the "credit-as-true" analysis, remand for immediate award is appropriate only if the ALJ made a legal error, the record is fully developed, and additional administrative proceedings would not be useful. *Dominquez*, 808 F.3d at 807.

As discussed herein, the ALJ committed harmful legal error by rejecting plaintiff's symptom testimony without clear and convincing reasons. However, further proceedings would be useful regarding the extent of plaintiff's alleged disabling impairments. For instance, while plaintiff suffers from panic attacks that last between 10 and 30 minutes, it is not clear whether he would be able to function in the time after, when he experiences "lingering anxiety." Tr. 34-36, 42. Additionally, plaintiff testified that he could pay attention for 10 to 15 minutes, but it is unclear how often he could focus for that amount of time throughout the day. Tr. 235

As such, further proceedings are required to resolve this case. *See Treichler*, 775 F.3d at 1099 (except in "rare circumstances," the proper remedy upon a finding of harmful error is to remand for further administrative proceedings).

## CONCLUSION

For the reasons stated above, the Commissioner's decision is REVERSED, and this case is REMANDED for further proceedings.

IT IS SO ORDERED.

DATED this 15th day of June, 2026.

/s/ Jolie A. Russo
Jolie A. Russo
United States Magistrate Judge